**JOE HAND PROMOTIONS, INC., Plaintiff,**

v.

**Kelley S. SHARP, et al., Defendants.**

**Civ. No. 11–559 (RHK/FLN).**

United States District Court, D. Minnesota.

Aug. 14, 2012.

Scott A. Wilson, Minneapolis, MN, for Plaintiff.

James P. Conway, Dennis P. Moriarty, Jaspers, Moriarty & Walburg, P.A., Shakopee, MN, for Defendant, Kelley S. Sharp.

## MEMORANDUM OPINION AND ORDER

RICHARD H. KYLE, District Judge.

This matter is before the Court on the Objections (Doc. No. 34) of Plaintiff Joe Hand Promotions, Inc. ("Joe Hand") to Magistrate Judge Noel's July 3, 2012 Report and Recommendation ("R & R"). In the R & R (Doc. No. 30), Judge Noel recommended that Defendant Kelley Sharp's Motion for Judgment on the Pleadings, or in the alternative, Motion for Summary Judgment (Doc. No. 18) be granted. For the reasons that follow, Joe Hand's Objections will be overruled.

This is a cable piracy case. Joe Hand was the owner of the exclusive distribution rights to a pay-per-view program entitled "Ultimate Fighting Championship 96: *Jackson v. Jardine*" (the "Program"), broadcast on March 7, 2009. It alleges that on that date, without authorization, the Program was intercepted and displayed on television screens at Kelley's Bar in Shakopee, Minnesota. It com-

menced this action in March 2011, asserting claims against Sharp Properties, Inc. ("Sharp Properties"), which owned the bar, and Sharp, who owned Sharp Properties, for violating two provisions of the Federal Communications Act of 1934 ("FCA"), as amended (Counts I and II),[1] and conversion under Minnesota law (Count III).

On May 7, 2012, Sharp moved for judgment on the pleadings, or in the alternative, for summary judgment. (Doc. No. 18.) He argued that he could not be individually liable under the FCA absent evidence sufficient to pierce the corporate veil, which he claimed was lacking. And if the FCA claims against him were dismissed, he argued that the Court should decline to exercise supplemental jurisdiction over the conversion claim. In response, Joe Hand asserted that veil piercing was not the correct standard for imposing individual liability on Sharp. Rather, it argued that it need only "establish that [Sharp] had the right and ability to supervise the violations and a strong financial interest in the activity." (Doc. No. 24 at 18.) "Based on [Sharp's] position as the sole shareholder of Sharp Properties," it argued there could be "no question" he had the "right and ability to

---

1. Count I asserts a violation of 47 U.S.C. § 605, while Count II asserts a violation of 47 U.S.C. § 553. Section 605 provides, in pertinent part, that "[n]o person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, [or] substance ... of such intercepted communication to any person. No person not being entitled thereto shall receive ... any interstate or foreign communication by radio and use such communication ... for his own benefit or for the benefit of another not entitled thereto." 47 U.S.C. § 605(a). Similarly, Section 553 provides, in pertinent part, that "[n]o person shall intercept or receive ... any communications service offered over a cable system, unless specifically authorized to do so." 47 U.S.C. § 553(a)(1). The distinction between the conduct prohibited by these statutes is minor; the

former "is directed solely at radio transmissions," while the latter "applies to theft of all signals being transmitted over a cable system." *TKR Cable Co. v. Cable City Corp.*, 267 F.3d 196, 206–07·(3d Cir.2001) ("Once a satellite transmission reaches a cable system's wire distribution phase, it is subject to § 553 and is no longer within the purview of § 605."). In the piracy context, therefore, the statutes are analogous and claims thereunder generally are treated similarly. *See, e.g., Int'l Cablevision, Inc. v. Sykes*, 75 F.3d 123, 133 (2d Cir.1996) (noting significant "interplay and overlap between §§ 553 and 605" in context of television-signal interception); *Integrated Sports Media, Inc. v. Canseco*, No. CV 10–7392, 2012 WL 631851, at *4 (C.D.Cal. Feb. 27, 2012) ("Sections 553 and 605 are similar in that they both prohibit the unauthorized display of television programming.").

supervise the violations and a strong financial interest in the activity," rendering individual liability appropriate. (*Id.* at 19.)

At the parties' request (*see* Doc. No. 19 at 2), the Court referred the Motion to Magistrate Judge Noel, who held a hearing on June 22, 2012. On July 3, 2012, Judge Noel recommended that the Motion be granted. He accepted Sharp's argument that Joe Hand "must pierce the corporate veil in order to hold [Sharp] personally liable for [Sharp Properties'] alleged violation of" the FCA. (R & R at 959.) He further noted that Joe Hand had "conceded at the hearing that it could not survive [the] Motion ... if the Court were to conclude that the traditional, piercing-the-corporate-veil analysis applies," and in any event Joe Hand had not "produced sufficient evidence to pierce the corporate veil." (*Id.*) Accordingly, he recommended that the FCA claims against Sharp be dismissed. And with those claims out of the case, he further recommended that the Court decline to exercise supplemental jurisdiction over the conversion claim against Sharp. (*Id.* at 4.)[2]

Joe Hand now objects, arguing that the Magistrate Judge applied an incorrect standard for individual liability under the FCA—veil piercing—rather than the "benefit and control" test, *i.e.*, whether the individual "had the right and ability to supervise the violations and a strong financial interest in the activity." (Doc. No. 34 at 1.) It contends that the latter standard is "firmly established national[ly]" and

presents the correct approach to individual liability in cable piracy cases. (*Id.* at 4.)

The Court reviews the Magistrate Judge's R & R *de novo.* Fed.R.Civ.P. 72(b)(3); 28 U.S.C. § 636(b)(1); D. Minn. LR 72.2(b). It may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(b). The Court need not accept new evidence and may "make a determination of the basis of th[e] record" developed before Judge Noel. D. Minn. LR 72.2(b).

Joe Hand frames the issue as whether the correct standard for individual liability under the FCA is "piercing the corporate veil" or "benefit and control." It argues for the latter, based on the relationship between the FCA and the Copyright Act, 17 U.S.C. § 101 *et seq.* According to Joe Hand, the FCA is intended to protect rights analogous to those under the Copyright Act. And because the benefit-and-control test is the "well-established standard for establishing [individual] liability in cases involving [copyright] violations," it argues that the Court should apply that test to its FCA claims against Sharp. (Doc. No. 34 at 5 (quoting *Joe Hand Promotions, Inc. v. Hart,* No. 11–80971–CV, 2012 WL 1289731, at *3 (S.D.Fla. Apr. 16, 2012)).)

To be sure, some courts (such as *Hart*) have accepted this argument and applied the benefit-and-control test when assessing individual liability for corporate misconduct under the FCA. Others have ques-

---

**2.** The Magistrate Judge elected to consider Sharp's Motion as one for summary judgment. Where (as here) extra-pleading material is submitted in connection with a motion for judgment on the pleadings and that material is not excluded by the Court, "the motion must be treated as one for summary judgment under Rule 56." Fed.R.Civ.P. 12(d). The Court enjoys "complete discretion" whether to exclude the material and proceed under

Rule 12 or, rather, consider it and proceed under Rule 56. *Stahl v. U.S. Dep't of Agric.,* 327 F.3d 697, 701 (8th Cir.2003). No party has objected to Judge Noel treating the Motion as one for summary judgment, which was proffered as an alternative basis for the requested relief. The Court, therefore, follows the parties' (and Judge Noel's) lead and treats the Motion as one for summary judgment.

tioned whether that test is properly applied in FCA cases, without answering the question. *See, e.g., J & J Sports Prods., Inc. v. Resendiz,* No. 08 C 4121, 2009 WL 1953154, at *2 n. 1 (N.D.Ill. July 2, 2009) ("[W]e are skeptical that the doctrine . . . should be extended to broadcast piracy actions."); *J & J Sports Prods., Inc. v. Torres,* No. 6:09–cv–391, 2009 WL 1774268, at *4 (M.D.Fla. June 22, 2009) ("[T]he Court is not convinced that the test for [individual] liability under the Copyright Act should be extended to the [FCA]."); *see also J & J Sports Prods., Inc. v. Mayreal II, LLC,* 849 F.Supp.2d 586, 589 n. 5 (D.Md.2012). Indeed, as noted in *Torres,* "[t]here is no indication . . . that the two Acts share a common legislative history or that the policy behind the [Copyright Act's individual] liability rule should apply to" cases under the FCA. 2009 WL 1774268, at *4.

Ultimately, however, the Court need not decide which of these two standards to apply, because the Eighth Circuit has articulated its own. In *Comcast of Illinois X v. Multi–Vision Electronics, Inc.,* 491 F.3d 938 (8th Cir.2007), the defendant corporation (Multivision) and its sole officer and shareholder (Abboud) were alleged to have violated the FCA—specifically, 47 U.S.C. § 553—by distributing cable descramblers used to steal the plaintiff's cable signal. The district court granted summary judgment for the plaintiff and assessed more than $2 million in damages against Multivision and Abboud, jointly and severally. On appeal, Abboud challenged the imposition of individual liability under the FCA. The Eighth Circuit affirmed, stating:

> Abboud was Multivision's only corporate officer and its sole owner[ ]. His deposition testimony demonstrates that he knew of the uses and features of the cable boxes Multivision sold, was intimately familiar with how cable services function, and was involved in setting company policy. *Because the record shows no distinction between Abboud's actions and Multivision's, the district court did not err in making Abboud personally liable for the judgment.*

*Id.* at 947–48 (emphasis added).

The Eighth Circuit, therefore, applied an individual-liability standard different from both "veil piercing" and "benefit and control." A plaintiff need not show a "failure to observe corporate formalities" or "insufficient capitalization," traditional elements of a veil-piercing analysis. *Damon v. Groteboer,* Civ. No. 10–92, 2011 WL 886132, at *5–6 (D.Minn. Mar. 14, 2011) (Tunheim, J.). Nor must a plaintiff necessarily establish that an individual defendant had a "strong financial interest" in the allegedly unlawful conduct, as in the benefit-and-control test. Rather, to impose individual liability under the FCA, a plaintiff must show that there exists "no distinction" between the individual's actions and that of his corporation. *Comcast,* 491 F.3d at 947.

Joe Hand has not satisfied this standard here. At most, it has demonstrated that Sharp was the sole proprietor and shareholder of Sharp Properties. But it has not created—indeed, it has not even attempted to show, either before Judge Noel or in connection with the instant Objections—a genuine issue that "no distinction" exists between Sharp's actions and that of his corporation. In *Comcast,* evidence in the record showed far more regarding the individual's involvement in the unlawful conduct. 491 F.3d at 947 (noting from deposition testimony that individual defendant "knew of the uses and features of the cable boxes [that the company] sold" and "was involved in setting company policy"). Here, by contrast, Joe Hand asks the Court to find Sharp personally liable based simply on the fact that he is the sole shareholder of Sharp Properties. *Comcast* requires more.

Notably, the Court would reach the same result even if it were to apply the "benefit and control" test advocated by Joe Hand. Joe Hand apparently believes all it must do to satisfy this test is point out that an individual solely owns a corporate wrongdoer. (*See* Doc. No. 24 at 19) ("Based on [Sharp's] position as the sole shareholder of Sharp Properties, Inc., the owner of Kelley's Bar, there can be no question that not only did he have the right and ability to supervise the violations and a strong financial interest in the activity, he was the *only* person with such rights and interests. In this regard, [Sharp] may be held individually liable.") (emphasis in original.) But *every* owner of a closely held corporation can direct the corporation's activities and will derive a financial benefit from the corporation's conduct. Accepting Joe Hand's logic would, therefore, automatically blur the distinction between closely held corporations and their individual owners in cases under the FCA. The Court perceives no reason to endorse such a result.

■ As noted last month in *J & J Sports Productions, Inc. v. Santillan,* No. 1:11 CV 1141, 2012 WL 2861378, at *2 (M.D.N.C. July 11, 2012), "an individual defendant who has the right and ability to supervise the violations and a strong financial interest in the activity may be liable under" the FCA, but "in order to show individual liability, *allegations of ownership of the establishment, without more, are insufficient.*" (emphasis added) (internal quotation marks and alterations deleted). *Accord, e.g., J & J Sports Prods., Inc. v. Dougherty,* Civ. A. No. 12–1255, 2012 WL 2094077, at *2 (E.D. Pa. June 11, 2012); *J & J Sports Prods., Inc. v. 291 Bar & Lounge, LLC,* 648 F.Supp.2d 469, 473 (E.D.N.Y.2009); *J & J Sports Prods., Inc. v. Daley,* No. CV 06–0238, 2007 WL 7135707, at *3–4 (E.D.N.Y. Feb. 15, 2007). Put another way,

to satisfy the "right and ability to supervise" prong, a plaintiff must allege more than the shareholder's mere right and ability to supervise the corporation's conduct generally. The plaintiff must allege that the defendant had supervisory power over the infringing conduct itself. Furthermore, to satisfy the "direct financial interest prong," a plaintiff cannot merely allege that the shareholders profit in some way from the profits of the corporation. Simply put, an individual's status as a shareholder or officer is insufficient to show that he or she had the requisite supervision authority or financial interest to warrant individual liability.

*J & J Sports Prods., Inc. v. Walia,* No. 10–5136 SC, 2011 WL 902245, at *3 (N.D.Cal. Mar. 14, 2011). This Court agrees. And here, Joe Hand has proffered nothing beyond proof of Sharp's ownership of Sharp Properties. This simply will not suffice. Accordingly, the Court agrees with the Magistrate Judge that Sharp's Motion must be granted, and Joe Hand's Objections will be overruled.

One final point bears mentioning. Sharp contends that with the federal claims against him dismissed, the Court should decline to exercise supplemental jurisdiction over the conversion claim. (*See* Doc. No. 19 at 22.) And he is correct that "[o]rdinarily, when the federal claims are disposed of before trial, courts decline to exercise supplemental jurisdiction over the state-law claims." (*Id.*) The problem, however, is that federal claims remain in this case—namely, those against *Sharp Properties*—even with the dismissal of the federal claims against Sharp *individually.* Accordingly, the "default" rule of declining supplemental jurisdiction is inapplicable, and the Court will not dismiss the conversion claim against Sharp. *See, e.g., Flowers v. Secrets Night Club,* No. 09 C 1736, 2010 WL 4625396, at *3 (N.D.Ill. Nov. 2,

2010) (retaining supplemental jurisdiction over state-law claims against individual defendant where federal claims remained against corporate defendant); *Wiggins v. Philip Morris, Inc.,* 853 F.Supp. 458, 469–70 (D.D.C.1994) (same).

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that Joe Hand's Objections (Doc. No. 34) are **OVERRULED,** Sharp's Motion for Judgment on the Pleadings, or in the Alternative, Motion for Summary Judgment (Doc. No. 18) is **GRANTED,** and Joe Hand's federal claims against Sharp (Counts I and II) are **DISMISSED WITH PREJUDICE.**

### REPORT AND RECOMMENDATION

FRANKLIN L. NOEL, United States Magistrate Judge.

**THIS MATTER** came before the undersigned United States Magistrate Judge on June 22, 2012 on Defendant's motion for judgment on the pleadings or, in the alternative, motion for summary judgment (ECF No. 18). This matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons set forth below, the Court recommends that Defendant's motion be **GRANTED.**

### I. BACKGROUND

Plaintiff Joe Hand Promotions, Inc. owns the exclusive commercial-distribution rights to the television broadcast of *UFC 96: Jackson v. Jardine,* a mixed-martial-arts, pay-per-view event that occurred on March 7, 2009. Compl. ¶ 10. Defendant Kelley Sharp is the sole shareholder of Defendant Sharp Properties, Inc., a now-dormant Minnesota corporation that owned and operated Kelley's Bar in Chas-

ka, MN.[1] Sharp Aff. ¶¶ 1, 4, ECF No. 20. Plaintiff alleges that Defendants violated 47 U.S.C. § 605 or, alternatively, 47 U.S.C. § 553 by displaying *UFC 96* at Kelley's Bar on March 7, 2009 without entering into the requisite licensing agreement with Plaintiff. Compl. ¶¶ 13–15, 19–20. Plaintiff also brings a claim for conversion. *Id.* ¶¶ 23–24.

### II. ANALYSIS

#### A. Standard of review

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." [2] Fed.R.Civ.P. 56(a). To support an assertion that a fact cannot be or is genuinely disputed, a party must cite "to particular parts of materials in the record," show "that the materials cited do not establish the absence or presence of a genuine dispute," or show "that an adverse party cannot produce admissible evidence to support the fact." Fed.R.Civ.P. 56(c)(1)(A)-(B). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R.Civ.P. 56(c)(3). In determining whether summary judgment is appropriate, a court must look at the record and any inferences to be drawn from it in the light most favorable to the nonmovant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

#### B. Vicarious liability under 47 U.S.C. § 605 and 47 U.S.C. § 553

The parties dispute under what circumstances a shareholder may be personally liable for a corporation's violations of 47 U.S.C. § 605 and 47 U.S.C. § 553. Both

---

1. Defendant Sharp Properties, Inc. has not filed an answer or otherwise entered an appearance in this case.

2. The Court elects to treat Defendant's motion as one for summary judgment.

statutes are silent on vicarious liability. *See* 47 U.S.C. § 605(e); 47 U.S.C. § 553(b) & (c). Plaintiff contends that vicarious liability arises if the shareholder "had the right and ability to supervise the violations and a strong financial interest in the" unauthorized interceptions of the pay-per-view event. *Joe Hand Promotions, Inc. v. Angry Ales, Inc.*, 2007 WL 3226451 at *4 (W.D.N.C. Oct. 29, 2007); *see also J & J Sports Prods., Inc. v. Betancourt*, 2009 WL 3416431 at *2 (S.D.Cal. Oct. 20, 2009) (same); *J & J Sports Prods., Inc. v. Potions Bar & Lounge, Inc.*, 2009 WL 763624 at *9 (E.D.N.Y. Mar. 23, 2009) (same); *Kingvision Pay–Per–View Ltd. v. Olivares*, 2004 WL 744226 at *5 (S.D.N.Y. Apr. 5, 2004) (same). Meanwhile, Defendant Sharp contends that the common law doctrine of piercing the corporate veil applies. *See Trs. of the Graphic Commc'ns Int'l Union Upper Midwest Local 1M Health & Welfare Plan v. Bjorkedal*, 516 F.3d 719, 730–31 (8th Cir.2008) (applying Minnesota law on shareholder liability for corporate debts); *Cooper v. Lakewood Eng'g & Mfg. Co.*, 874 F.Supp. 947, 955 (D.Minn.1994) (same).

The Court agrees with Defendant Sharp that Plaintiff must pierce the corporate veil in order to hold him liable for the corporation's alleged violation of 47 U.S.C. § 605 or 47 U.S.C. § 553. *See Bjorkedal*, 516 F.3d at 730 ("The primary benefit, and often the primary purpose, of incorporating a closely-held business is to shield the shareholders from liability for the corporation's debts."); *see also* 47 U.S.C. § 605(f) ("Nothing in this section shall affect any right, obligation, or liability under … any other applicable Federal, State, or local law."). Plaintiff conceded at the hearing that it could not survive Defendant's motion for summary judgment if the Court

were to conclude that the traditional, piercing-the-corporate-veil analysis applies to 47 U.S.C. § 605 and 47 U.S.C. § 553. The Court agrees. Plaintiff has not produced evidence sufficient to pierce the corporate veil and hold Defendant Sharp liable for Defendant Sharp Properties, Inc.'s alleged violation of either statute.[3]

## III. RECOMMENDATION

Based on the foregoing, and all the files, records, and proceedings herein, it is **HEREBY RECOMMENDED** that:

1. Defendant's motion for judgment on the pleadings or, in the alternative, motion for summary judgment (ECF No. 18) should be **GRANTED.**

2. Having dismissed all of the claims over which the Court has original jurisdiction, the Court should decline to exercise supplemental jurisdiction over Plaintiff's remaining claim against Defendant Sharp for conversion. *See* 28 U.S.C. § 1367(c)(3).

---

**3.** Because the Court concludes that Defendant Sharp is entitled to summary judgment on the issue of liability, it does not reach the question of whether the complaint is deficient for failing to specify the means by which Defendants allegedly intercepted *UFC 96.*